IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

|  |  |
|---|---|
| PAUL ANDREW LEITNER-WISE, | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| LWRC INTERNATIONAL, LLC, *et al.*, | * |
| | * |
| Defendants. | * |

Case No.: GJH-16-2430

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Paul Andrew Leitner-Wise brings this case against Defendants LWRC International, LLC ("LWRCI") and Sig Sauer, Inc. ("Sig Sauer") alleging patent infringement, breach of contract and unjust enrichment in relation to his 2004 invention of a "Self-Cleaning Gas Operating System for a Firearm." ECF No. 1. Pending before the Court are Defendant Sig Sauer's Motion to Dismiss, ECF No. 14, and Defendant LWRCI's Motion to Dismiss, or in the Alternative, for Summary Judgment, ECF No. 15. These issues have been fully briefed and a hearing is unnecessary. Loc. R. 105.6 (D. Md. 2016). For the reasons stated below, the Court will grant Defendant Sig Sauer, Inc.'s Motion to Dismiss in full and Defendant LWRCI's Motion to Dismiss as it relates to the patent infringement claim. Furthermore, the Court will convert LWRCI's Motion to Dismiss into a Motion for Summary Judgment with respect to the breach of contract and unjust enrichment claims, and will grant LWRCI's Motion for Summary Judgment as to those claims.

1

## I.     BACKGROUND[1]

In 2004, Plaintiff created a "Self-Cleaning Gas Operating System for a Firearm," a self-regulating short-stroke piston operating system for AR-15 type self-loading rifles, and was subsequently awarded a patent for his invention by the U.S. Patent Office ("the '581 patent"). ECF No. 1 ¶ 19; ECF No. 1-1. Plaintiff founded a company named Leitner-Wise Rifle Company, Inc. ("LWRC"), which he then sold in 2005. ECF No. 1 ¶¶ 21-22. On April 11, 2005, Plaintiff was retained by LWRC as an executive and entered into an employment agreement defining the terms of their relationship. ECF No. 1 at ¶ 22; *see also* ECF No. 1-2. The employment agreement contained a provision acknowledging that Plaintiff had

> developed certain Intellectual Property prior to the execution of this Agreement which Employer desires to exercise ownership rights....Employer will separately pay a royalty of one half of one percent (.05%) on the net sale price of each product containing a previously patented or patentable or otherwise protected device developed by the Executive....Payment of royalties under this section shall not be withheld or terminated regardless of any Termination of the Executive for any reason.

ECF No. 1 ¶ 23; *see also* ECF No. 1-2 at 8.[2] Plaintiff left his employment with LWRC on October 31, 2006, and on the same date, assigned the pending '581 patent to his former employer. ECF No. 1 ¶ 24; *see also* ECF No. 1-3. The Assignment stated that

> [i]n consideration of the sum of One Dollar ($1.00) or equivalent and other good and valuable consideration paid to...Paul Leitner-Wise, the undersigned, hereby sell(s) and assign(s) to Leitner-Wise Rifle Company, Inc...their entire right, title and interest...in the invention known as "Self Cleaning Gas Operating System for a Firearm."

ECF No. 1-3.

---

[1] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint, and are accepted as true.

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Contemporaneously with his departure, Plaintiff executed additional contracts with LWRC.[3] On October 31, 2006, Plaintiff signed a document entitled "Termination of Employment" which included a provision releasing LWRC "from any and all claims….including, but not limited to, all claims arising out of [Plaintiff's] employment, all claims arising out of the Employment Agreement….[and] all breach of contract and other common law claims." ECF No. 15-6 at 1-2. An additional contract entitled "Intellectual Property Assignment Agreement By And Between Paul Leitner-Wise and Leitner-Wise Rifle Co. Inc." (hereinafter, "Intellectual Property Agreement") included a provision stating that "[Leitner-Wise] hereby transfers and assigns to [LWRC] all of [Leitner-Wise's] right, title and interest to any and all Intellectual Property ownership interest [Leitner-Wise] may have throughout the world in and to the Assigned Intellectual Properties." ECF No. 15-8 at 2. "Assigned Intellectual Properties" is separately defined in the contract to include the '581 patent. *See* ECF No. 15-8 at 1,7. Furthermore, a section in the same contract entitled "Payment and Communication," stated that "the consideration for the assignment and other rights granted to [LWRC] under this Agreement consists of good and valuable consideration, the sufficiency of which is hereby acknowledged by [Leitner-Wise] pursuant to a separate Equities Purchase Agreement, and the consummation of the transactions contemplated thereby, there being no further consideration *or royalty payable* in respect thereof." ECF No. 15-8 at 3 (emphasis added). [4] This contract was also signed by Plaintiff on October 31, 2006, the same day that the '581 patent was assigned to LWRC. ECF No. 15-8 at 6; *see also* ECF No. 1-3.

_____

[3] Defendant LWRCI attached these additional contracts to its Motion to Dismiss, or in the Alternative, for Summary Judgment. As explained *infra*, the Court will convert the Motion to Dismiss into a Motion for Summary Judgment with respect to the breach of contract and unjust enrichment claims. Therefore, it is appropriate to consider these documents with respect to those claims, viewed in the light most favorable to the Plaintiff. The Court will not consider the facts in this paragraph as they relate to Sig Sauer's claims or LWRCI's patent infringement claim.

[4] The Equities Purchase Agreement was also attached to Defendant's motion, though the Court need not rely on it to reach its decision. *See* ECF No. 15-9.

3

On April 18, 2008, LWRC assigned the '581 patent to Defendant LWRCI. ECF No. 1 ¶ 29; ECF No. 1-4.[5] Plaintiff claims that this assignment was made without due consideration of the royalties entitled to him pursuant to his employment agreement with LWRC, which he claims survived his termination from LWRC. *Id.* ¶¶ 34-35. Plaintiff states that neither LWRCI nor Sig Sauer ever paid him for the value received from their ongoing use of the intellectual property contained within the '581 patent. *Id.* ¶ 48.

Plaintiff initiated this case on June 29, 2016, asserting claims of patent infringement and unjust enrichment against both LWRCI and Sig Sauer, as well as a claim of breach of contract against LWRCI alone. ECF No. 1. On September 6, 2016, Sig Sauer filed a Motion to Dismiss, arguing that the case should be dismissed pursuant to either Rule 12(b)(1) for lack of standing, because Plaintiff had relinquished his rights to the '581 patent, or pursuant to 12(b)(6) for failure to state a claim. ECF No. 14. The same day, LWRCI filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, echoing Sig Sauer's arguments that the case could be dismissed either for lack of standing or for failure to state a claim. ECF No. 15. Both Defendants also requested that the Court award them attorneys' fees and costs associated with drafting their respective motions. ECF No. 15-1 at 17-20; ECF No. 14-1 at 21-22.

On September 22, 2016, Plaintiff filed a Consolidated Opposition to Defendants' Motions to Dismiss, arguing that Plaintiff's right to receive royalties provided him with standing to assert a patent infringement claim. ECF No. 18. Plaintiff also argues that converting LWRCI's Motion into a Motion for Summary Judgment is inappropriate because the documents on which

---

[5] Plaintiff's Complaint includes additional allegations about the 2008 assignment of the patent, claiming that the assignment was defective and then fraudulently concealed, referencing a prior patent infringement case between LWRCI and Sig Sauer in support of his claim. However, these allegations do not affect the Court's reasoning because, having already assigned his right to LWRC in 2006, any defects in a subsequent assignment of the patent do not support any claim Plaintiff might have to the patent.

4

LWRCI relies are not authenticated. ECF No. 18 at 5. On October 11, 2016, Defendants filed their Replies in support of their respective Motions. ECF Nos. 19 (Sig Sauer) & 20 (LWRCI).

## II.   STANDARDS OF REVIEW

### A.  Motion to Dismiss Pursuant to Rule 12(b)(1)

"[C]ourts generally analyze issues of standing pursuant to Rule 12(b)(1)," *Borlo v. Navy Fed. Credit Union*, 458 B.R. 228, 231 (D. Md. 2011), which governs motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1). "It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown,* 462 F.3d 312, 316 (4th Cir. 2006) (citation omitted). Once a challenge is made to subject matter jurisdiction, the plaintiff bears the burden of proving that the Court has subject matter jurisdiction. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted); *see also Ferdinand-Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777 (D. Md. 2010). The court should grant a Rule 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans,* 166 F.3d at 647.

### B.  Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a motion to dismiss invoking 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555) ("a plaintiff's

5

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

Fed. R. Civ. P. 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

### C. Converting Motion to Dismiss to Motion for Summary Judgment

LWRCI's motion is styled as a Motion to Dismiss or, in the Alternative, for Summary Judgment under Fed. R. Civ. P. 56. If the Court considers materials outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before

6

the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.3d 253, 260-61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

However, summary judgment should not be granted if the nonmoving party has not had the opportunity to discover information that is essential to his opposition to the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5, (1987). If the nonmoving party feels that the motion is premature, that party can invoke Fed. R. Civ. Pro. 56(d). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986). Under Rule 56(d), the Court may deny a motion for summary judgment if the non-movant shows through an affidavit that, for specified reasons, he or she cannot properly present facts, currently unavailable to him or her, that are essential to justify an opposition. Fed. R. Civ. Pro. 56(d). "'[T]he failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (citations omitted). But a failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court served as the functional equivalent of an affidavit." *Id.* at 244-45 (citations and internal quotation marks omitted).

Here, Plaintiff has not filed an affidavit under Rule 56(d) or made an equivalent showing of the need for more discovery. Plaintiff's main argument that summary judgment is inappropriate is that the contracts on which LWRCI relies are not authenticated. ECF No. 18 at

5. However, this allegation is belied by the fact that LWRCI's filing was accompanied by a declaration from R. Kevin Bernstein, the Vice President of Strategy of LWRCI, authenticating the documents in question by declaring that the attached were true and correct copies of the contracts. ECF No. 15-2. The declaration further states that the documents were found in the records of RifTech, LLC, a company which owns a controlling interest in LWRCI, and were maintained in the ordinary course of business. *Id.* "[M]ultiple courts have concluded that 'a company receiving a document from another business can lay a sufficient foundation where it, acting in the regular course of its business, integrates the received record into its own business records, relies on it in its day to day operations and surrounding circumstances indicate trustworthiness.'" *Sheet Metal Workers' Local Union No. 100 Washington, D.C. Area Pension Fund v. W. Sur. Co.*, 187 F. Supp. 3d 569, 586 n.14 (D. Md. 2016) (quoting *Bank of New York Mellon v. Adams*, No. 5:13-CV-245-BO, 2014 WL 3810631, at *1 (E.D.N.C. Aug. 1, 2014)). Plaintiff's own Complaint states that LWRC assigned the '581 patent to LWRCI. ECF No. 1 ¶ 29. Therefore, it is reasonable that business records relating to the assignment from Plaintiff to LWRC would have passed to LWRCI in conjunction with the second assignment. As Plaintiff has not filed an affidavit under Rule 56(d) or proffered any other grounds that summary judgment is unwarranted at this time, the Court will convert LWRCI's Motion to Dismiss into aMmotion for Summary Judgment with respect to the claims of breach of contract and unjust enrichment.

### D. Motion for Summary Judgment

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . . admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is

8

"no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*, 477 U.S. at 322. The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322-23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986).

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, if the non-movant's statement of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, the court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III.   DISCUSSION

### A.  Patent Infringement Claim

Plaintiff claims both Defendants have infringed upon his '581 patent by making, using, selling and offering for sale self-loading rifles that incorporate the "Leitner-Wise self-regulating

9

short-stroke piston system" without his consent, license or authorization. ECF No. 1 ¶¶ 56-57. He claims that as the inventor of the '581 patent and as an assignor who maintains a royalty interest in the patent, he has standing to bring a claim of patent infringement. *Id.* ¶ 54. Defendants argue that Plaintiff lacks standing to bring this claim based on his 2006 written assignment of his "entire right, title and interest" in the '581 patent to LWRC. ECF No. 14-1 at 9-11; ECF No. 15-1 at 8-10; *see also* ECF No. 1-3.

Only a patentee may bring a civil action for patent infringement. *See* 35 U.S.C. § 281. "Patentee" is defined as "not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Id.*, § 100(d). Because the patent laws themselves define "patentee" and thus, who has standing to bring a case, Federal Circuit case law on standing controls the analysis. *See In re CTP Innovations, LLC*, No. 14-CV-3884-MJG, 2016 WL 6996738, at *2 (D. Md. 2016) (citing *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003)).[6]

As long as the agreement is in writing, interests in patents are assignable. *See* 35 U.S.C. § 261. Thus, a patent holder may grant a portion of their interests in a patent to another party, for example through a non-exclusive license to sell the patented product, while retaining other interests, such as the right to sue for infringement. *See Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005)( "[t]he owner of a patent or the owner's assignee can commence an action for patent infringement, but a licensee alone cannot…unless the licensee holds 'all substantial rights' in the patent. A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement.")(internal citations omitted)).

---

[6] The Federal Circuit has exclusive jurisdiction over appeals in patent cases. *See* 28 U.S.C. § 1295.

Yet, when the assignment is for all rights or all substantial rights, "the transferee—and not the transferor—is the effective owner for purposes of standing." *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1342 (Fed. Cir. 2014) (judgment vacated on other grounds). When a party holds this core bundle of rights, "it alone has standing to sue for infringement." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007).

Therefore, when there has been a written assignment of a patent, the Court examines whether the assignment transferred "all substantial rights" or if certain rights were retained by the assignor. *See id.* at 1339-40. "In construing the substance of the assignment, a court must carefully consider the intention of the parties and the language of the grant." *Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1265 (Fed. Cir. 2007) (citing *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991)).

Here, the assignment in question states that Plaintiff "sell(s) and assign(s) to Leitner-Wise Rifle Company, Inc....their entire right, title and interest" in the '581 patent. ECF No. 1-3. The unambiguous language in this grant demonstrates an intent to transfer, without reservation, all rights in the '581 patent from Plaintiff to LWRC.[7] There is no reference to a license agreement as the Plaintiff now alludes to in his Opposition motion, or to any reservation of substantial rights. Furthermore, the Federal Circuit has implied that this exact language signifies a transfer of all substantial rights in the patent to the assignee. *See SGS-Thomson Microelectronics, Inc. v. Int'l Rectifier Corp.*, 31 F.3d 1177 at *5 (Fed. Cir. 1994)(unpublished).

Even if the Court were to construe the language in the assignment stating that Plaintiff was relinquishing his rights to the patent "[i]n consideration of the sum of One Dollar ($1.00) or equivalent *and other good and valuable consideration*," ECF No. 1-3 (alteration and emphasis

---

[7] The Court observes that Merriam-Webster lists "all" as the first synonym for "entire." *See* Merriam-Webster, "Entire," https://www.merriam-webster.com/thesaurus/entire (last visited February 16, 2017).

added), to refer to the royalties that Plaintiff was owed pursuant to the employment agreement executed the prior year, that would not save his claim. The retention of a right to royalties does not limit the assignment unless the retention of royalty rights was a reservation of a substantial right, such as the right to exclude others from making the patented product. *See SGS-Thomson Microelectronics, Inc.*, 31 F.3d at *5. Here, the plain language of the assignment transferring the "entire right, title and interest" shows that there was no reservation of a substantial right. Thus, the Court finds that the unambiguous language of the assignment demonstrates that Plaintiff transferred all rights to LWRC in 2006, depriving him of standing to bring this claim. Defendants' motions are therefore granted as to Plaintiff's patent infringement claim.

### B. Breach of Contract

Next, Plaintiff alleges that by accepting the assignment of the '581 patent from LWRC, LWRCI assumed the underlying obligation to pay royalties to Plaintiff, as laid out in his 2005 employment contract with LWRC. ECF No. 1 ¶ 69. By failing to pay those royalties, Plaintiff claims that LWRCI breached their contract with him. *Id.* ¶¶ 70, 72. LWRCI denies this allegation, submitting evidence that Plaintiff waived all of his rights to the royalty payments when he left LWRC in 2006, two years before LWRCI gained the rights to the '581 patent. ECF Nos. 15-6 (Termination Letter); 15-8 (Intellectual Property Assignment Agreement).

Plaintiff has not specified whether he is bringing his breach of contract claim under Maryland or Virginia state law. "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Danner v. Int'l Freight Sys. of Washington, LLC*, 855 F. Supp. 2d 433, 447 (D. Md. 2012) (quoting *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011)). Maryland is the forum state for this Court and thus, Maryland's choice of

law rules apply. Under Maryland law, "contract claims are ordinarily governed by the law of the state where the contract was made ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another jurisdiction." *Id.* (citing *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573 (1995))(alteration in the original). Here, the employment agreement was executed in Virginia and states that Virginia law governs its interpretation. ECF No. 1-2 at 10. Plaintiff has offered no argument for why this provision is unenforceable or why application of Virginia law would be inappropriate. Thus, the Court will apply Virginia law in interpreting the contract.

Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 323 (2015) (citation omitted). When interpreting a contract, the Virginia Supreme Court has instructed courts to "to construe a document according to its plain terms if it is clear and unambiguous on its face," without looking for meaning "beyond the instrument itself." *Ott v. L & J Holdings, LLC*, 275 Va. 182, 187 (2008). Evidence outside the document itself, known as parol evidence, is only appropriate if the document is ambiguous and review of additional information is needed to "determine the intent of the parties." *Id.*

In the present case, Plaintiff has failed to put forward any evidence of the existence of a legally enforceable obligation between him and Defendant LWRCI. He states that his 2005 employment agreement with LWRC, which included a provision entitling him to royalty payments on the net sale of certain products, should impose a continuing legal obligation upon LWRCI to make royalty payments. However, he fails to address the evidence that LWRCI has

13

submitted, showing that he signed away his rights to royalty payments in 2006 when he left his employment with LWRC.

A basic concept of contract law is that contracts are not set in stone and can be modified by the assent of the parties. *See Medlin & Son Constr. Co. v. Matthews Grp., Inc.*, No. 160050, 2016 WL 7031843, at *5 (Va. 2016) (citation omitted) ("[B]y the rules of the common law....it is competent for the parties to a simple contract in writing, before any breach of its provisions, either altogether to waive, dissolve, or abandon it, or add to, change, or modify it, or vary or qualify its terms, and thus make a new one."). Here, Defendant LWRCI submitted a document titled "Termination of Employment," signed by Plaintiff on October 31, 2006. *See* ECF No. 15-6. The document notes that it relates to the "[t]ermination of [Plaintiff's] employment pursuant to that certain employment agreement, dated April 11, 2005, by and between [LWRC and Plaintiff]." *Id.* at 1. LWRCI states, and it seems logical, that this is a reference to the employment agreement, between the same parties executed on April 11, 2005, which Plaintiff attached to his initial pleadings. *See* ECF No. 1-2. The first provision of the October 31 termination letter is a release, stating that in exchange for LWRC releasing Plaintiff from any claims they might have against him, the execution of an Equities Purchase Agreement, and "other good and valuable consideration" Plaintiff "unconditionally release[s] and discharge[s] [LWRC].... from any and all claims....including, but not limited to, all claims arising out of [Plaintiff's] employment, all claims arising out of the Employment Agreement....[and] all breach of contract and other common law claims." ECF No. 15-6 at 1-2.

According to his Complaint, Plaintiff's right to receive a royalty payment arises out of his 2005 employment agreement. ECF No. 1 ¶¶ 23-26.

> Like the terms of any contract, the scope and meaning of a release agreement ordinarily is governed by the intention of the parties as expressed in the document

14

they have executed. When the contract is lawful and the language is free from ambiguity, the agreement furnishes the law that governs the parties.

*Berczek v. Erie Ins. Grp.*, 259 Va. 795, 799 (2000) (internal citations omitted). Here, the release provision is unambiguous and the relief that Plaintiff seeks now, enforcement of a royalty provision in his 2005 employment contract, is clearly foreclosed by the 2006 termination letter.

Plaintiff, despite having ample time, has not put forward any facts to show that the Defendant's interpretation of these contracts is incorrect. Plaintiff has failed to put forward even an affidavit asserting that, as a signatory to these documents, he has a different interpretation of their meaning than the interpretation LWRCI has put forward. Nor has Plaintiff made a showing of what discovery he would need to address any alleged flaws in these contracts.

The unambiguous and unchallenged language of this contract alone would sever Plaintiff's royalty rights. However, Defendant LWRCI submits an additional contract, the Intellectual Property Agreement, which Plaintiff also signed, specifically relinquishing his right to royalties in the '581 patent. The Intellectual Property Agreement stated that "[Leitner-Wise] hereby transfers and assigns to [LWRC] all of [Leitner-Wise's] right, title and interest to any and all Intellectual Property ownership interest [Leitner-Wise] may have throughout the world in and to the Assigned Intellectual Properties." ECF No. 15-8 at 2. "Assigned Intellectual Properties" is separately defined in the contract to include the '581 patent. See ECF No. 15-8 at 1,7. In a section entitled "Payment and Communication," the contract stated that "the consideration for the assignment and other rights granted to [LWRC] under the agreement consists of good and valuable consideration, the sufficiency of which is hereby acknowledged by [Leitner-Wise] pursuant to a separate Equities Purchase Agreement…there being no further consideration *or royalty payable* in respect thereof." ECF No. 15-8 at 3 (emphasis added). The unambiguous language of this contract again demonstrates that Plaintiff contracted away his royalty rights in

15

the '581 patent over a decade ago. As with the termination letter, Plaintiff fails to put forward any evidence contradicting the plain language of the contract and Defendant's reasonable interpretation of it.[8] Based on the record before it, the Court finds that there is no genuine dispute of material fact regarding the existence of a legal obligation between Plaintiff and LWRC to make royalty payments in relation to the '581 patent. Thus, Defendant LWRCI's Motion for Summary Judgment is granted as to the breach of contract claim.

### C.  Unjust Enrichment

Finally, the Court turns to Plaintiff's unjust enrichment claims against both Sig Sauer and LWRCI. As with the breach of contract claim, Plaintiff fails to specify whether he is bringing his unjust enrichment claims under Maryland or Virginia law. However, the Court need not resolve this issue because, regardless of which law he invokes, Plaintiff has failed to state a claim for unjust enrichment.

To state a claim for unjust enrichment under Virginia state law, Plaintiff would need to establish that "(1) [Plaintiff] conferred a benefit on [defendant] (2) [Defendant] knew of the benefit and should reasonably have expected to repay [plaintiff]; and (3) [Defendant] accepted or retained the benefit without paying for its value." *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008). Maryland requires Plaintiff to make an almost identical showing, stating that a Plaintiff must allege that "(1) the plaintiff confer[red] a benefit on the defendant; (2) the defendant kn[ew] or appreciate[d] the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances would be inequitable without the paying of value in return." *Mona v. Mona Elec. Group, Inc.*, 176 Md. App. 672, 712-13 (Md. Ct. Spec. App. 2007).

---

[8] Plaintiff's allegation that Defendant failed to attach a portion of the Equities Purchase Agreement is irrelevant to the Court's decision, as the Court need not rely on the Equities Purchase Agreement to decide this case.

16

Addressing first the allegations as they apply to Defendant Sig Sauer, Plaintiff has put forward no facts to show that he conferred a benefit on Sig Sauer. While Plaintiff alleges generally that Sig Sauer benefited from the intellectual property contained within the '581 patent, he provides no facts to support the conclusion that Sig Sauer knew of or appreciated those benefits prior to October 31, 2006. As discussed *supra*, on that date, Plaintiff assigned his "entire right, title and interest" in the '581 patent to LWRC. ECF No. 1-3. Thus, as Sig Sauer correctly points out, Plaintiff could not confer any benefit to them after October 31, 2006, because he had no benefit to provide to them after his assignment of the patent. *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 249 F. Supp. 2d 703, 709 (D. Md. 2003) (dismissing unjust enrichment claim, holding that "[plaintiff] must plead that **it** provided a benefit to [defendant] and it has not done so, nor does it appear that it could.") (alteration and emphasis in the original). Thus, Defendant Sig Sauer's Motion to Dismiss is granted as to Plaintiff's unjust enrichment claim.[9]

Similarly, Plaintiff fails to establish a claim of unjust enrichment against Defendant LWRCI. As discussed above in relation to Plaintiff's breach of contract claim, the contracts submitted by Defendant unambiguously indicate that upon execution of the Intellectual Property Agreement in 2006, Plaintiff was left without any rights in the '581 patent. *See* ECF No. 15-8 at 2 ("[Leitner-Wise] hereby transfers and assigns to [LWRC] all of [Leitner-Wise's] right, title and

---

[9] In addition to failing to state a claim, Plaintiff's unjust enrichment cause of action is also likely pre-empted by federal patent law, especially where, as is the case with his claim against Sig Sauer, it is plead alone and not in the alternative to a breach of contract claim. *See Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998) (overruled on other grounds) ("If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law."); *see also GIV, LLC v. Int'l Bus. Machines Corp.*, No. CIV.A. 3:07CV067-HEH, 2007 WL 1231443, at \*4 n.6 (E.D. Va. 2007)("The proper claim for the misappropriation of patented technology is patent infringement, not unjust enrichment. Unjust enrichment claims based on state law are generally preempted by federal patent law after the patent issues, unless the patentee can show the infringer obtained an incremental benefit from the information it received before the patent issued over and above what the public received from the published patent.").

17

interest to any and all Intellectual Property ownership interest [Leitner-Wise] may have throughout the world in and to the Assigned Intellectual Properties.").[10] Thus, Plaintiff has failed to demonstrate a genuine dispute of material fact regarding his contention that he conferred a benefit upon LWRCI. Therefore, Defendant LWRCI's Motion for Summary Judgment will be granted with respect to Plaintiff's claim of unjust enrichment.

### D. Defendants' Request for Attorneys' Fees and Costs

Defendants also request that the Court award attorneys' fees and costs associated with defending this case, pursuant to either 35 U.S.C. § 285, authorizing reasonable attorney's fees to the prevailing party in "exceptional" patent infringement cases, or under the "inherent powers" of the Court.[11] An "exceptional" case is one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). "A movant must establish an exceptional case by a preponderance of the evidence." *Astornet Techs., Inc. v. BAE Sys., Inc.*, No. 14-CV-0245, 2016 WL 4141006, at *3 (D. Md. 2016) (citing *Octane*, 134 S. Ct. at 1758). In addition to any sanctions provided by statute, the Court's inherent powers allow fee-shifting for "'willful disobedience of a court order'" or "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons....'" *Octane*, 134 S. Ct. at 1758 (citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975)).

---

[10] "Assigned Intellectual Properties" is defined in the contract to include the '581 patent. See ECF No. 15-8 at 2.

[11] Defendant Sig Sauer's reference to 35 U.S.C. § 1927 appears to be a conflation of 28 U.S.C. § 1927 (counsel's liability for excessive costs) and 35 U.S.C. § 285 (award of attorney's fees to prevailing party in patent cases). As Defendant goes on to cite *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), which addressed the later statute, the Court will interpret its request as one for attorney's fees pursuant to 35 U.S.C. § 285.

18

Here, while both Defendants ultimately prevailed, the Court's decision on the patent infringement claim turned on an unpublished decision by the Federal Circuit, finding that the retention of royalty rights does not provide a former patent holder with standing to bring a claim. While Defendants highlight additional pleading deficiencies in Plaintiff's complaint, such as a failure to specify whether Plaintiff was alleging direct or indirect infringement, Defendant Sig Sauer itself points out that the pleading standard on which Plaintiff incorrectly relied was abrogated only six months prior to the filing of the case. Therefore, although the Court fully acknowledges the time and expense required to produce the Defendants' well-written briefs, it finds that they have failed to make a sufficient showing that this is an "exceptional case" allowing financial recovery for their labors.

The Court next turns to Defendants' request for sanctions under the court's inherent authority. Although this authority "extends to a full range of litigation abuses" including bad faith, *see Thomas v. Ford Motor Co.*, 244 F. App'x 535, 538 (4th Cir. 2007), it "must be exercised with restraint and discretion." *Kreischer v. Kerrison Dry Goods*, 229 F.3d 1143 (4th Cir. 2000) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)) (unpublished). Here, the Court declines to exercise its discretion to award attorneys' fees where there is no evidence of affirmative falsehoods submitted to the court and the case is being resolved promptly, prior to the time and expense of discovery proceedings. Thus, Defendants' request for attorneys' fees is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Sig Sauer's Motion to Dismiss, ECF No. 14, is granted and Defendant LWRCI's Motion to Dismiss or in the Alternative, for Summary Judgment, ECF No. 15, is granted. A separate Order follows.

Dated: February 2**7**, 2017

GEORGE J. HAZEL
United States District Judge